# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JUSTIN W. SETTLE,

    Plaintiff,

v.                                                   Case No: 3:18-cv-396-J-32JRK

ZACHARY DUBOSE,

    Defendant.

_____

## **ORDER**

### I. Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Civil Rights Complaint (Doc. 1) against correctional officer Zachary Dubose. Plaintiff alleges that Defendant failed to protect him from another inmate's attack. Specifically, Plaintiff states:

> On 11-14-2017 while housed at Suwanne[e] C.I. [A]nnex, confinement cell P3-108, inmate Larry Gregory was moved into cell P3-108 with [P]laintiff at approximately 11:00 a.m. (inmate Gregory was already ex[h]ibiting hostile behavior with officers)[.]
>
> At approximately 12:30 pm when the lunch meal was served, inmate Gregory informed Sergeant Howell that he was homicidal and suicidal and declared a psychological emergency. Sgt. Howell ignored inmate Gregory and continued to feed the lunch meal. Inmate Gregory la[y] on the floor and yelled beneath the cell door that he was homicidal and suicidal and had a

psychological emergency to which Sgt. Howell responded by saying "I heard you" but continued to walk away.

At this time correctional officer Zachary Dubose approached cell P3-108 and inmate Gregory informed C.O. Dubose that he was homicidal/suicidal and had a psychological emergency. C.O. Dubose then turned and yelled loud and very tauntingly "Audio, cell P3-108 has a psychological emergency and I don't give a f*ck" then walked away.

At this time Plaintiff was urinating and inmate Gregory came from behind and swung a knife type weapon towards Plaintiff[']s head/neck area. Plaintiff blocked such attack with his right arm. Inmate Gregory pushed Plaintiff up against the wall and repeatedly stabbed Plaintiff in the lower torso (ribs/stomach) area.

Plaintiff was able to push inmate Gregory to the floor and gain access to the cell door and call for help[. W]hen officers arrived, they used chemical agents to get inmate Gregory to surrender the weapon and submit[] to handcuff procedures. Plaintiff was then treated by medical for the following injuries:

. . . one deep stab wound on Plaintiff[']s right arm, through which the bone was visible. Such wound required three stitches to close, one la[]ceration on Plaintiff[']s right arm which was treated with ster[]i strips, eight stab wounds to Plaintiff[']s lower torso which were treated with a big gauze bandage and tape. Plaintiff received more injuries to [his] left arm and right leg but such injuries were not documented.

Doc. 1 at 5-6. Plaintiff seeks compensatory and punitive damages as relief. Id. at 6.

Before the Court is Defendant's Motion for Summary Judgment (Doc. 43). Defendant argues that Plaintiff failed to exhaust his administrative remedies before filing this case; Plaintiff fails to state an Eighth Amendment violation; Defendant is entitled to qualified immunity; and Plaintiff is not entitled to compensatory or punitive damages. See generally Doc. 43. Plaintiff filed a Brief in Opposition (Doc. 44) and a Statement of Disputed Factual Issues (Doc. 45). Upon review, the Court finds that Plaintiff failed to exhaust his administrative remedies prior to filing this case; thus, the Court treats the Motion as a motion to dismiss. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." (quotations and citation omitted)).

**II.  Summary of Parties' Positions as to Exhaustion and Relevant Grievances**

Defendant argues that the grievances filed by Plaintiff did not contain sufficient information to place the Department on notice of Plaintiff's claims and/or were not filed in accordance with the Department's Rules. See Doc. 43 at 7-8. Plaintiff contends that he filed two formal emergency grievances on November 17, 2017, but there is no record of either of these formal grievances

because they were thrown away or destroyed and not properly processed. See Doc. 44 at 3-5; see also Doc. 44-2 at 4. According to Plaintiff, one of the formal grievances was "directed toward exhausting administrative remedies and preserving video/audio evidence." Doc. 44 at 3. He asserts that he explained in that grievance "that it was an emergency because the grievance procedure in place was a corrupt one and if Plaintiff waited on a response from an informal grievance for the allowable time (10 days) and received no response, then filed a formal grievance and waited for the allowable time (20 days) and still received no response, the video/audio evidence would be destroyed thus causing serious and irreparable harm to Plaintiff." Id. at 3-4. According to Plaintiff, the other formal grievance was also an "emergency" and it was "directed toward protection from inmate Gregory, wherefore it described all the facts involved in the stabbing incident, including Defendant Dubose's failure to respond reasonably, and thus would have been sufficient to exhaust administrative remedies." Id. at 4. However, Plaintiff states that prison officials rendered the grievance process unavailable because they destroyed or threw away his emergency formal grievances. Id. at 5.

Plaintiff states that when he did not receive a receipt for these formal grievances, on December 1, 2017, he submitted an informal grievance, id. at 6, stating:

> On 11-17-2017 I submitted one informal grievance and two DC1-303 formal grievances. I have already received [a] response to the informal grievance, however I have not even received a rec[ei]pt for either of the formal grievances. One of the grievances was pertaining to protective management[1] and the other was about an incident where I was stabbed by my room[m]ate in confinement.
>
> I was in cell P3108 when I submitted these grievances and the wing-3 video camera will show me submit[] them to designated staff at approximately 9:00 am. When this issue goes to court, the video will be sufficient enough to show I exhausted administrative remed[ie]s if it comes to that, but that would bring unwanted attention to a c[o]rrupt grievance system. All I'm asking is for rec[ei]pt of [g]rievances.

Doc. 43-4 at 3 (grievance #231-171-0005).[2] Plaintiff's grievance was "approved" that same day with the following explanation:

> Records indicate that the last formal grievance that was received by this office from you was March 2017, however your allegations ha[ve] been documented and forwarded to the Inspector General[']s Office for investigation and disposition. This may or may not result in a personal interview with you. While action has been initiated and you[r] allegations have been documented, this does not constitute substantiation of your allegations. Therefore, based on the foregoing information your grievance is approved.

---

[1] Plaintiff avers in his Declaration that he "was seeking protection from inmate Gregory to assure that this wouldn't happen again." Doc. 44-2 at 4.

[2] Duplicate at Doc. 44-3 at 2.

5

Doc. 43-4 at 3-4.

On December 7, 2017, Plaintiff submitted an informal grievance labeled "Emergency" and stated:

> Please see informal grievance #231-171-0005 which was approved. Such grievance was pertaining to a DC1-303 formal grievance that I submitted on 11-17-2017 but was never filed or documented. Since my formal grievance was never filed or documented then <u>there is nothing preserving video and audio evidence which is the substance of the formal grievance I submitted on 11-17-2017</u>. Since nothing is preserving such evidence, it will be destroyed after 12-13-2017. Please preserve video and audio evidence from P-dorm which shows an incident where I was stabbed while in cell P3108 between 12:00 pm and 1:00 pm on the date of 11-14-2017.

Doc. 43-5 at 5 (emphasis added) (grievance #231-1712-0038).[3] The response dated December 15, 2017, "approved" his grievance and stated:

> Informal Grievance #231-1711-0005[4] was not submitted by you, it has another inmate[']s name on it. Formal Grievance Coordinator indicates you have not filed any formal grievances on 11-17-17. Due to the assault resulting in a use of force, all video evidence is preserved.

Doc. 44-4 at 2.

---

[3] Duplicate at Doc. 44-4 at 2.

[4] It appears that Lt. Melia, the individual who responded to the grievance, inadvertently looked at the wrong grievance number. <u>See also</u> Doc. 44-2 at 5. Plaintiff referred to grievance #231-171-0005, which was filed by him.

6

In the meantime, on December 8, 2017,[5] Plaintiff filed an "emergency grievance" to the Secretary. He claimed as follows:

> This is an emergency grievance to Bureau of Inmate grievance Appeals.
>
> On 11-17-2017 I submitted a formal grievance at institutional level. By 11-21-2017 I had received NO rec[ei]pt so I sent a request to grievance coordinator askin[g] for such rec[ei]pt. I never rec[ei]ved a response so on 12-1-2017 I submitted an informal grievance asking for a rec[ei]pt and the response is attached. My formal grievance was never filed even though I submitted it to the designated official with the lock grievance box and video evidence will show on 11-17-2017 at approximately 830 am the designated officials stopped at cell P3108 and put such grievance in the lock box.

Doc. 44-9 at 2 (grievance #17-6-50340).[6] Plaintiff then went on to describe the allegations similar to those in his Complaint. See id. On December 19, 2017, Plaintiff's grievance was "returned without action" and "not accepted as a grievance of an emergency nature." Id. at 3. Plaintiff was advised that his "request for administrative appeal is in non-compliance with the Rules," but if he was "within the allowable time frames for processing a grievance, [he] may resubmit [his] grievance at [his] current location." Id. The Appeals Records log

---

[5] Plaintiff states in his Declaration that he drafted this emergency grievance on December 6, 2017, and submitted it on December 7, 2017, although he dated it December 8, 2017. See Doc. 44-2 at 5.

[6] Duplicate at Doc. 43-4 at 2.

7

shows that this is the only grievance appeal received from Plaintiff. Doc. 43-6 at 1.

On December 14, 2017, Plaintiff submitted an informal grievance stating:

> On 11-14-17 while housed in P3-108 I was stabbed by my cell mate. On 11-17-17 I submitted 2 formal grievances (1 pertaining to the stabbing, 1 pertaining to protection). On 11-20-17 I was moved to cell P2-216. On 11-21-17 I submitted a request asking for rec[ei]pt of the 2 formal grievances I turned in. On 12-1-17 I had not received an answer to my request so I submitted an informal grievance asking for such rec[ei]pt. On 12-6-17 I received a response to such informal grievance (log #231-171-0005). Response stated that the last formal grievance rec[ei]ved by that office from me was March, 2017, however my allegations were documented and forwarded to the Inspector General[']s Office for investigation and disposition. Video evidence will clearly show these formal grievances being collected by classification officials with the lock box so such an investigation should expose corruption. I attached the informal response to a formal grievance pertaining to the original issue (stabbing) and submitted it 12-7-17 at approximately 9:00 am but have still not received rec[ei]pt. Please send me a rec[ei]pt.

Doc. 43-5 at 6 (grievance #231-1712-0067). On December 18, 2017, Plaintiff's grievance was "returned" with the following response: "Every grievance that is rec[ei]ved by this office is processed and the inmate is sent a rec[ei]pt for (only) formal grievances. There has not been any formal grievances rec[ei]ved from you." Doc. 44-10 at 2.

8

## III. Analysis

The Prison Litigation Reform Act requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Jones v. Bock, 549 U.S. 199, 216 (2007); see Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) ("The prison's requirements, and not the PLRA, define the boundaries of proper exhaustion, so 'the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim.'" (quoting Dimanche v. Brown, 783 F.3d 1204, 1211 (11th Cir. 2015)). Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process: "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC." Dimanche, 783 F.3d at 1211 (citation omitted). However, prisoners may skip the informal grievance step in limited circumstances. Fla. Admin. Code Ann. r. 33-103.005(1). As relevant here, "[i]nmates may . . . initiate the process at the formal institutional level for issues pertaining to the following: grievance of an emergency nature . . . . Inmates may proceed directly to the Office of the Secretary on the following issues as

9

governed by subsection 33-103.007(6), F.A.C.: grievance of emergency nature . . . [and] protective management . . . ." Fla. Admin. Code r. 33-103.005(1).

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. In such a situation, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

10

In examining the issue of exhaustion, courts employ a two-step process.

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing Turner, 541 F.3d at 1082-83).

At the first step of the exhaustion analysis, taking Plaintiff's assertions in the Response as true, the Court finds dismissal is not warranted. At the second step, however, the Court finds Plaintiff failed to exhaust his administrative remedies before filing this case. The Court addresses Plaintiff's allegations and the relevant grievances in chronological order.

The underlying incident occurred on November 14, 2017, so Plaintiff had 20 days from that date to file an informal grievance (December 4, 2017) or 15 days from that date to submit an "emergency" grievance (November 29, 2017), if appropriate. See Fla. Admin. Code Ann. r. 33-103.011(1)(a), (d).

Plaintiff claims that he submitted two formal emergency grievances on November 17, 2017, but he asserts that these grievances were thrown away or not properly processed. Assuming Plaintiff properly submitted these two formal emergency grievances at the institutional level on November 17, 2017, Plaintiff

could have—and was required to—complete the third step of the process and appeal to the Secretary when he did not receive a timely response.[7] See Fla. Admin. Code r. 33-103.011(4) ("Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."). Moreover, even assuming Plaintiff properly filed an emergency grievance directly to the Secretary regarding his claim against Defendant, his allegations relating to Defendant failing to protect him and/or needing to preserve evidence would not satisfy the "emergency grievance" requirements. This point is exemplified by the fact that his "emergency" grievance to the Secretary on December 8, 2017 was returned without action and "not accepted as a grievance of an emergency nature." Doc. 43-4 at 1-2; see Fla. Admin. Code r. 33-103.002(4) (defining emergency grievance as "[a] grievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate"); see also Gipson v. Renninger, 750 F. App'x 948, 952-53 (11th Cir.

---

[7] In Plaintiff's December 8, 2017 emergency grievance, he stated that he submitted a formal grievance on November 17, 2017 at the institutional level, which suggests that he submitted the November 17, 2017 formal grievances at the institutional level rather than directly to the Secretary. Doc. 43-4 at 2; see also Doc. 1 at 8 ("Plaintiff filed a formal grievance at institutional lev[e]l.").

2018) (discussing requirements for "emergency" grievances).[8] Thus, the filing of these grievances, of which the Court has no record, would not have exhausted Plaintiff's administrative remedies.

Insofar as Plaintiff argues that the grievance process was "unavailable" because his formal grievances were thrown away or not properly processed, he has not shown that the informal grievance process was unavailable to him between November 14, 2017 and December 4, 2017. During that time, he acknowledges that he filed at least two informal grievances. See Doc. 43-4 at 3 (informal grievance dated December 1, 2017, referencing an informal grievance filed on November 17, 2017). He argues that he filed an emergency formal grievance because the system is corrupt and had he waited on a response from an informal grievance and did not receive one, and then waited the response time on a formal grievance and received no response, then the video/audio evidence would have been destroyed. Doc. 44 at 3-4. Plaintiff's hypothetical of what could have happened had he properly completed the grievance process

---

[8] Plaintiff additionally argues that "if D.O.C. officials would have processed Plaintiff's emergency grievance submitted November 17, 2017 and followed the policy in place at that time, Plaintiff would have received the response with directions to resubmit[] at the informal level well within 20 days of the November 14, 2017 incident." Doc. 44 at 4. In making this assertion, Plaintiff appears to admit that the nature of his claims did not satisfy the emergency grievance requirements and his grievance would have been returned. Thus, he should have started at the informal grievance step.

13

does not equate to the process being unavailable. He could have filed an informal grievance addressing the allegations against Defendant, but he simply failed to do so.

Further, while Plaintiff's December 1, 2017, and December 7, 2017, informal grievances were "approved," neither grievance contained any allegations regarding his claim against Defendant. Doc. 43-4 at 3; Doc. 43-5 at 5.[9] Thus, these grievances were not sufficient to "alert[] prison officials to the problem and giv[e] them the opportunity to resolve it before being sued." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1219 (11th Cir. 2010) (citations omitted); see Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (recognizing that the exhaustion "requirement grants prison authorities time and opportunity to address complaints internally before allowing the initiation of a federal case." (quotations and citation omitted)). Moreover, Plaintiff's December 8, 2017 direct emergency grievance to the Secretary did not exhaust his administrative remedies because it was returned without processing. See Dimanche, 783 F.3d at 1210 ("The PLRA requires 'proper exhaustion' that

---

[9] Additionally, the December 7, 2017, informal grievance would have been untimely as it related to the November 14, 2017 incident, as the 20th day was December 4, 2017. See Fla. Admin. Code Ann. r. 33-103.011(1)(a) (providing a 20-day deadline to submit an informal grievance).

14

complies with the 'critical procedural rules' governing the grievance process." (quoting Woodford v. Ngo, 548 U.S. 81, 95 (2006))).

Finally, Plaintiff argues that he "tried numerous times to resubmit[] [his] grievance at the informal level and requested an extension of time to resubmit[], however [his] informal grievances were never responded to, so on March 21, 2018, [he] filed" this case. Doc. 44-2 at 6. As noted above, the FDOC's grievance procedure specifically addresses the time frames in which responses to grievances and appeals must be given and permits an inmate to proceed to the next step of the grievance procedures if he does not receive a timely response. See Fla. Admin. Code r. 33-103.011(4). Plaintiff does not even allege that he attempted to proceed to the next step of the grievance process when he did not receive responses to these informal grievances. See Doc. 44-2 at 6.[10]

After reviewing all of the grievances submitted and considering the parties' positions, the Court finds that Plaintiff failed to exhaust his administrative remedies prior to filing this case. Accordingly, it is

**ORDERED:**

---

[10] The grievances Plaintiff filed in 2019 (Docs. 44-12 to 44-13), after the Complaint was filed, are irrelevant in the exhaustion analysis because "[t]he time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, [as] it is then that the exhaustion bar is to be applied." Goebert, 510 F.3d at 1324.

1. Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED to the extent** that this case **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies.

2. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 23rd day of March, 2020.

*/s/ Timothy J. Corrigan*

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 3/13
c:
Justin W. Settle, #V08109
Counsel of Record